*404 Judgment, Supreme Court, New York County (Paul Wooten, J.), entered April 7, 2011, dismissing the complaint, affirmed, without costs. Appeal from order, same court and Justice, entered March 18, 2011, dismissed, without costs, as subsumed in the appeal from the judgment.
This is a dispute over whether plaintiff Kasowitz law firm is entitled to a success fee in addition to the flat $1 million fee it has already received in connection with its representation of defendant Duane Reade. The issues are whether the parties’ emails established a binding fee agreement, and whether the fee was to be limited to the moneys Duane Reade received in settlement of the underlying Cardtronics litigation, or was to encompass all of the benefits Duane Reade received from the termination of its ATM placement contract with Cardtronics, including increased revenues from Duane Reade’s new ATM contract with JP Morgan Chase (Chase).
“To establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound (22 NY Jur 2d, Contracts § 9)” (Kowalchuk v Stroup, 61 AD3d 118, 121 [2009]). An exchange of emails may constitute an enforceable agreement if the writings include all of the agreement’s essential terms, including the fee, or other cost, involved (see Mark Bruce Intl., Inc. v Blank Rome, LLP, 60 AD3d 550, 551 [2009]; Williamson v Delsener, 59 AD3d 291 [2009]; see generally Cobble Hill Nursing Home v Henry & Warren Corp., 74 NY2d 475, 482 [1989], cert denied 498 US 816 [1990]).
On September 8, 2006, Kasowitz (by attorney Goldberg) emailed a proposed fee arrangement to Duane Reade’s in-house counsel, Bergman, which provided in relevant part:
“We can do the Cardtronics case for a flat $1 million, payable over 10 months as you suggested (exclusive of disbursements), plus 20% of amounts recovered above some number, as opposed to a percentage payable from dollar one.
“Based on the numbers we have, which obviously are approximations, we actually think the damages could be between $10 and $11 million over the life of the contract. So, I’m thinking of 20% of everything above $4 million as the success fee portion. Thus, if we get $10 million, the total fee would be $2.2 million (with you keeping $7.8 million obviously). That’s $1 million in flat fee, plus $1.2 million in success fee.
“That’s actually a bit lower than what I had previously sug *405 gested of a discount off of time plus 20%. That is, if we did 60% of time plus 20% contingency from dollar one, and we recover $10 million, our total fee would be $2.9 million (assuming our actual hourly would come to $1.5 million, 60% of which is $900,000; leaving $900,000 in time charges, plus $2 million in success fee). Even if the recovery is $5 million (settlement or what have you), the total fee would be $1.2 million, which still is a discount of a few hundred thousand based on ‘splitting the baby.’ What do I need to do to put you in a new lawsuit today?
“By the way, as to our discussion about it being a ‘binary’ case of either we win it all or lose it all, though in large part that’s true, the damage question is not entirely irrelevant. We’re saying that we should get paid based on the actual amount of transactions; figuring that out likely will be disputed before we’re done.”
On September 19, 2006, Goldberg sent an email to Bergman in which he stated, in relevant part, “I would love to have our fee arrangement in place by then so I can just tear into these guys.” In an email response to Kasowitz that same day, Bergman wrote “Go.”
These three emails constitute an integrated fee agreement (see Nolfi Masonry Corp. v Lasker-Goldman Corp., 160 AD2d 186, 187 [1990] [“a binding agreement may be assembled from more than one writing”]). By the plain language employed, they demonstrate that Kasowitz made an offer to represent Duane Reade in the Cardtronics case for a flat $1 million, plus a success fee equal to 20% of the amounts recovered above $4 million in that litigation, and that Duane Reade accepted that offer. Kasowitz is not entitled to a success fee under the terms of the fee agreement, since Duane Reade received total compensation of approximately $1.75 million — well below the $4 million threshold — as a result of the settlement of the Cardtronics action.
The dissent believes that the fee agreement is ambiguous as to the scope of the fee. The dissent reasons that the term “recover,” as used in the September 8, 2006 email, may reasonably be interpreted to encompass noncash resolutions, i.e., any value received as a result of the settlement of the Cardtronics action. However, in adopting this position, the dissent fails to consider the term “recovered” or “recovery” in the context of the email as a whole, and improperly relies on extrinsic evidence, including Bergman’s affidavits, in order to find ambiguity where none exists.
“The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties’ *406 intent[, and that] [t]he best evidence of what parties to a written agreement intend is what they say in their writing” (Greenfield. v Philles Records, 98 NY2d 562, 569 [2002] [internal quotation marks and citation omitted]). “Whether a contract is ambiguous is a question of law and extrinsic evidence may not be considered unless the document itself is ambiguous” (South Rd. Assoc., LLC v International Bus. Machs. Corp., 4 NY3d 272, 278 [2005]; see RM Realty Holdings Corp. v Moore, 64 AD3d 434, 437 [2009]). A contract is unambiguous if the language it uses has “a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion” (Breed v Insurance Co. of N. Am., 46 NY2d 351, 355 [1978]). “Mere assertion by one that contract language means something to him, where it is otherwise clear, unequivocal and understandable when read in connection with the whole contract, is not in and of itself enough to raise a triable issue of fact” (Unisys Corp. v Hercules Inc., 224 AD2d 365, 367 [1996] [internal quotation marks omitted]).
The language in the fee agreement does not contain any ambiguity, since it states the precise fee arrangement and explains the specific limited circumstances under which Kasowitz would be compensated by Duane Reade for legal services provided in the Cardtronics action. As evidenced by the examples set forth in the September 8, 2006 email, the only reasonable interpretation of the language employed is that Kasowitz based its fee proposal on the expected recovery or potential earnings of $10 million from the surcharge fees that Cardtronics had withheld and would owe over the “life of the contract” between Duane Reade and Cardtronics. Indeed, Kasowitz clearly stated that “[w]e’re saying that [Duane Reade] should get paid based on the actual amount of transactions.”
There is no basis for attributing to plaintiff the value of the termination of the ATM agreement, given the fee agreement’s silence on that issue (see Greenfield v Philles Records, 98 NY2d at 569). The fee agreement makes no reference to any new or potential agreement that Duane Reade might thereafter enter into with Chase or any other entity if the Cardtronics agreement was terminated, nor does it indicate that the success fee would be based on any such agreement. As Supreme Court found, “[i]f Kasowitz wanted to ensure that it would be receiving a contingency fee based on any developments with any other ATM machine providers, Kasowitz should have explicitly written such in its contingency fee.” An omission or even a mistake in a contract does not constitute an ambiguity (see Reiss v *407 Financial Performance Corp., 97 NY2d 195, 199 [2001]; Gladstein v Martorella, 71 AD3d 427, 429 [2010]).
The existence of the valid and enforceable fee agreement precludes the causes of action sounding in quasi contract (see Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 388 [1987]).
We have considered plaintiffs remaining contentions and find them without merit. Concur — Andrias, J.P., Renwick and Román, JJ.